————————o————————

## No. 5613.

## CENTRAL GLASS COMPANY, LTD., vs. GERMAN-AMERICAN INSURANCE CO.

### Syllabus.

Issues of fact only are involved herein.

Appeal from the Civil District Court for the Parish of Orleans, Division "B," No. 88,271. Hon. F. D. King, Judge.

Lazarus, Michel & Lazarus, for plaintiff and appellee.

Clegg, Quintero, Gidiere & Luzenberg, for defendant and appellant.

His Honor, HORACE L. DUFOUR, rendered the opinion and decree of the Court as follows:

When this cause was first before us, we affirmed the judgment of the District Court in favor of plaintiff. An application for a writ of **certiorari** was granted by the Supreme Court which resulted in the reversal of the judgment and a remanding of the cause to the District Court to be proceeded with according to law and the views expressed in the opinion.

In the course of its opinion, the Supreme Court said:

"Upon the whole we are of opinion that defendant should have been permitted to show from the records of plaintiff's business the profits or losses made by it during the period from April 1st, 1905, to the date of the fire. We are also of opinion that testimony as

to profits earned by another concern engaged in the same business as plaintiff would be competent evidence for the purpose of this case."

In our original opinion, after elaborately examining the figures presented and the theories suggested by both sides, we summed up our conclusion of fact as follows:

"It will then be seen that, even upon the defendant's hypothesis that the profits should be calculated on the basis of the average earnings of preceding years, the loss sustained by the plaintiff is in excess of its insurance, $33,200."

Our present task need not go beyond ascertaining what new light, if any, the testimony adduced on the last trial may have shed on this point.

The only new evidence is that of Weckerling, St. Paul and Moses.

In commenting on this new evidence the District Judge said:

"In preparing his proofs of loss for his clients, defendant's accountant limited the average profits to the years 1906 and 1907. The Supreme Court directs that the profits should be averaged from 1905 to the date of the fire, and during this trial evidence as to the profits in all these years was admitted.

"Upon defendant's accountant's own 'statement of loss by fire August 30th, 1908, as taken from their books,' limited as it is to the profits of 1906 and 1907, by adding the articles accidently omitted from the inventory, and including therein the item of salvage glass arbitrarily omitted by the accountant, the loss exceeds thirty thousand dollars. (See St. Paul No. 1.)

"If upon the accountant's testimony, the profits for 1907 alone were to be considered and he testified to adjust a loss it is necessary to take only the preceding year's profits—and add to that the items omitted from the inventory, based upon his own

— 23 —

figures, the loss sustained by plaintiffs would be thirty-three thousand seven hundred and forty-six dollars and fifty-eight cents. (See St. Paul, A-1, and St. Paul, No. 1.)

"If, as shown by the report of the Court's experts, the American Auditing Company, represented by Mr. Fortier, and the well known, able accountant, Mr. Elkin Moses, based upon the report of the defendant's accountant, the profit on sales were averaged from April 1st, 1905, to December 31st, 1907, including the items omitted and those excluded, the loss sustained by the plaintiffs would be over thirty-three thousand dollars.

"These results are demonstrated by an analysis of the defendant's accountant's statement of loss, made by the experts appointed by the Court, by the documents filed and the evidence taken. This analysis made by the Court's experts is admitted by defendant's accountant to be absolutely correct, if there is considered with his statement of loss the items omitted from the inventory of December 31st, 1907, and the salvage glass, to be part of the inventory.

"As to the omitted articles, the evidence shows their omission was purely accidental, and as to the mirrors, it was defendant's accountant's inquiry that provoked the investigation and developed the omission of other merchandise, the result of accident, not of an attempt to falsify, deceive or defraud.

"The absence of these articles from the inventory was fully explained and their value established by the testimony of the former employees of the company, who were entirely disinterested.

"Plaintiff's right to recover for these articles is no longer an open question. This Court so held in its former opinion, and to the authorities therein cited will be added the following from a recognized authority.

"Mr. Griswold, in his book on Adjustments, at page 262, says:

"'When a party, in making up his proofs of loss inadvertently omitted mention of certain articles

which were destroyed, he may, if the claim is not paid and suit is brought, recover for the articles destroyed but omitted in the proofs.' (On the same page he gives a long list of authorities, to which add 168 U. S., p. 456.)

"The plaintiffs having proved their loss as claimed by them in their proofs of loss, based upon fixed and ascertained profits earned during the year of the fire, and also based on the average profits earned from April, 1905, to December 31st, 1907, applied to their statement of loss, with the re-instatement of articles arbitrarily eliminated and those accidently omitted but accounted for, the defendant at this trial advanced, for the first time in this Court, another method for ascertaining the loss. That is, the defendant attempted to establish the value of merchandise on hand at the time of the fire by applying on the basis of averages 'the ratio of labor to material.' That is to say, for every dollar's worth of merchandise manufactured and sold, a certain percentage of labor was expended thereon, and taking as a guide the average of the cost of labor for three years, and applying that ratio to the material sold, the defendant contends, would determine the quantity of merchandise remaining on hand.

"In support of this contention, defendants placed their accountant, Mr. St. Paul, on the stand, and offered certain papers prepared by him, tending to show his calculations and the result of his work.

"These papers have the effect, apparently, of reducing the value of the merchandise on hand. This examination, however, clearly showed that the method pursued, was not a safe rule to be guided by, as the expenditure for labor may have been upon the merchandise of others, or repair work, which would materially affect the result. This method of establishing a loss is unprecedented, and appears to be an afterthought.

"All writers on the subject state clearly how a proof of loss should be prepared, and the course to be pursued in order to ascertain the loss an insured

— 25 —

has sustained. This exceptional method the Court has not been able to find in any book, and it has not been shown or directed by counsel for defendant to any authority sanctioning it.

"The testimony of defendant's accountant on this subject and the percentage of labor to material is in the record. He also testified on behalf of the defendant in the United States Circuit Court on one of the concurrent policies issued to the plaintiff on the same subject and the percentage of labor to material. His deposition in that case was read to him, and offered in this case, and he admitted that the statements he then made were correct. The statements he made in that Court on the subject of the ratio of labor to material and the statements he made here differ, and required explanation. It is contended by plaintiffs that they are irreconcilable. They are in the record, and with merely stating the fact that they differ, as the Court is bound to do, the Court makes no comment.

"The papers prepared by the defendant's accountant, his tabulated and comparative statements of the percentage or ratio of labor to material (St. Paul, 10 to 13), are shown by the analysis of the Court's expert accountants, Mr. Fortier and Mr. Moses, and by the testimony of Mr. Moses, to be unreliable, and not adopted and followed in ascertaining plaintiff's loss.

"Taking defendant's accountant's own figures, without questioning their origin and source, and assuming them to be correct, it is demonstrated by the expert's analysis that with the items omitted from the inventory, 'the loss sustained was thirty-two thousand eight hundred and fifty-five dollars and sixty-six cents. This is further demonstrated by the supplemental report of the American Audit Company and Mr. Moses, which shows that the loss sustained exceeded thirty-six thousand dollars, upon the basis of the ratio of labor to material, as testified to by Mr. St. Paul in the case in the United States Circuit Court referred to.

"It makes no difference which one of the two principles of law contended for is applied, which one of the statements is taken, whether the one based on fixed profits, or the one based on average profits, or the one based on the ratio of labor to material, either upon the expert's analysis and primary report, or upon defendant's accountant's own statement of the loss, with the omitted articles added, the evidence proves that the plaintiffs sustained a loss largely in excess of its insurance.

As to Mr. Weckerling's testimony the trial Judge says:

"The Supreme Court was of the opinion that testimony as to the profits earned by another concern engaged in the same business as plaintiffs would be competent evidence to support the defense of exaggerated profits. To support their contention, the defendant placed on the witness stand Mr. Joseph Weckerling, the President of the Louisiana Glass and Mirror Works, whose testimony on the former trial was excluded.

"The plaintiff contends that on its contracts and sales it made a gross profit of thirty-three and one-third per cent, and its contention is proved by the evidence and the expert's reports. The evidence also shows that the average net profits for 1905, 1906 and 1907 were approximately twenty per cent, and that its gross profits exceeded fifty per cent. It is shown by the report of the expert, on a basis of twenty-seven and a half per cent gross profits, the plaintiff's loss exceeded the amount of its insurance.

"Mr. Weckerling testified that the gross profits necessary to maintain and operate the business, such as he and the plaintiffs carried on, should be about fifty per cent to insure a reasonable profit. To keep even, without incurring a loss, or making a profit, the gross profits should be at least thirty per cent. His testimony confirms the claim of plaintiffs as to their gross profits earned in 1905, 1906 and 1907, necessary in the conduct of its business exceeding fifty per cent, and confirms by comparison of the gross

profits earned by the two establishments in 1908 that plaintiff's loss exeeceded the amount insured. This comparison method is, however, not reliable as stated, on account of the many differences between the two concerns and their management. The comparative statement prepared by the experts Fortier and Moses (St. Paul, A-1), is with reference to **net** profits not the gross profits, which are alone considered.''

Our re-examination of the case leads us to the conclusion that the decision originally reached as to the main case is correct and we adhere to the same.

But under the ruling in **Central Glass Company vs. Niagrara Insurance Company** the penalties and attorney's fees cannot be recovered. This necessitates an amendment of the judgment.

It is therefore ordered that the judgment appealed from be amended so as to read as follows:

It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, the Central Glass Company, Limited, and against the defendant the German American Insurance Company of New York in the sum of one thousand ($1000) dollars, with legal interest theron from judicial demand until paid, the costs of the lower Court to be paid by defendant and those of appeal to be paid by the plaintiff, and, as amended, the judgment is affirmed.

St. Paul, J., takes no part.

Opinion and decree, January 13th, 1913.

Rehearing refused, February 10th, 1913.

Writ denied, March 19th, 1913.